T. A. LOVING COMPANY v. OSCAR MILLER CONTRACTOR, INC.

No. 7910SC147

(Filed 15 January 1980)

Contracts § 16.1— subcontract for curb and gutter work—notice to perform three years later—contract binding

Where plaintiff general contractor and defendant subcontractor entered into an agreement whereby defendant was to provide asphalt paving and curb and gutter work for a hospital, defendant agreed to incorporate in its contract with plaintiff the conditions of the general contract between plaintiff and Durham County, including the provisions therein pertaining to the extension of time, agreed to commence work "when notified" by plaintiff, and agreed to guarantee the quoted prices for the duration of the job "plus any time extensions granted by the Owner," then defendant was bound by its subcontract, which was entered into on 14 June 1972, to perform when plaintiff asked defendant on 4 March 1975 to submit a starting time and when plaintiff gave defendant notice to perform on 5 May 1975, since plaintiff's request was made within the original 1000-day time period plus the 334-day time extension granted by the owner.

APPEAL by defendant from *Bailey, Judge.* Judgment entered 8 November 1978 in Superior Court, WAKE County. Heard in the Court of Appeals 17 October 1979.

The plaintiff in this civil damage action, T. A. Loving Company, is a general contractor on contract with Durham County to build a hospital. The defendant, Oscar Miller Contractor, Inc., subcontractor with the plaintiff to provide asphalt paving and curb and gutter work for the hospital. The plaintiff alleged that defendant refused to perform under its contract. The defendant denied liability on the ground that the contract was terminated by plaintiff's failure to request performance within a reasonable period of time. Defendant also filed a counterclaim alleging that the plaintiff's failure to request performance within a reasonable period of time was a breach of contract.

The following evidence is undisputed. On 2 June 1972 plaintiff entered into a contract with Durham County (the "Owner") to build a nine-story hospital. The contract consisted primarily of the "Agreement," the "General Conditions" and "all Modifications issued subsequent thereto." Paragraph 43 of the General Conditions, as modified by the Supplemental General Conditions, contained a subsection on delays and extensions of time which explicitly provided that upon the occurrence of certain conditions, or when authorized by the Owner or Architect, "the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine."

It is also undisputed that on 14 June 1972 defendant entered into a subcontract with plaintiff for the concrete, asphalt and paving work. The first paragraph of the subcontract provided in relevant part:

"[T]he Subcontractor agrees to furnish all material and perform all work . . . in accordance with the general conditions, special conditions, plans, specifications, and the Contract between the Contractor [plaintiff] and the Owner [Durham County] . . . and the Subcontractor hereby agrees to be bound to the Contractor by the terms of the above Contract, general conditions, special conditions . . . and to assume toward the Contractor all the obligations and responsibilities that the Contractor, by those documents, assumes toward the Owner . . . ."

Similar provisions are also provided in paragraph twenty-four of the subcontract. The third paragraph of the subcontract provides:

"The Subcontractor agrees that the time of performance is of the essence of this contract, and further agrees to commence work when notified. The Subcontractor further agrees to perform all work under this contract with all possible dispatch, and to execute all work in such a manner as not to delay any other Subcontractor or the Contractor in the general progress of the whole work."

Page Four of the Subcontract first identifies unit prices for the concrete, curb and asphalt paving work, and then provides as follows:

"Acceptance of this subcontract guarantees the above prices for the duration of the project. Duration of the project is defined as being the original job time plus any time extensions granted by the Owner."

The original time for completion of the general contract was 1000 days, commencing 19 June 1972 and ending 15 March 1975. After several "Change Orders," however, the original time period was extended by 334 days.

The initial work schedule, prepared after the subcontract was signed, showed that site improvements including curb and gutter work were to be done August-October 1972 and January-February 1975. A copy of this schedule was sent to defendant on 3 August 1972. Although other progress schedules were prepared, none were sent to the defendant.

On 4 March 1975 plaintiff sent defendant a letter asking defendant to set up a definite starting time. In a letter dated 17 March 1975 defendant's counsel indicated that the subcontract was terminated because of plaintiff's extreme delay in requesting defendant's performance. On 5 May 1975 plaintiff again notified defendant that defendant was to proceed with the work under the subcontract. Defendant never set a starting date and never performed any work. Plaintiff solicited another contract to do the gutter and asphalt work and this second subcontractor was paid $25,314 more than defendant would have been paid.

The defendant presented evidence tending to show that defendant made its bid to work for the plaintiff based on informa-

tion given to it by the plaintiff, prior to the time the subcontract was executed, that the paving work was to be done in 1972. The defendant's president, Oscar Miller, testified that the work could not be started in 1972 because the site had not been graded. In addition, the defendant's representatives went by the job site frequently to find out if the site was ready. In late 1973, after defendant had called upon plaintiff's job superintendent, defendant was told that the curb and gutter work had been rescheduled for July and August of 1974. No notice to begin work, however, was received until 4 May 1975.

After both parties had presented their evidence, the trial court entertained plaintiff's Rule 50 motion and directed a verdict in favor of the plaintiff on defendant's counterclaim and in plaintiff's favor on plaintiff's damage claim for $25,314.

*Parker, Sink & Powers by William H. Potter, Jr., for defendant appellant.*

*Poyner, Geraghty, Hartsfield & Townsend by John J. Geraghty, David W. Long and Cecil W. Harrison, Jr., for plaintiff appellee.*

CLARK, Judge.

The controlling issue in this appeal is whether the defendant was bound by its subcontract with plaintiff to perform when plaintiff asked defendant on 4 March 1975 to submit a starting time and when plaintiff gave defendant notice to perform on 5 May 1975. "It is settled law that where the terms of a written instrument or contract are explicit, the Court determines their effect by declaring their legal meaning." *Howland v. Stitzer,* 240 N.C. 689, 696, 84 S.E. 2d 167 (1954). We now hold that defendant was obligated to perform under its subcontract with plaintiff.

The critical facts have already been set out. Notwithstanding any conversations defendant may have had with the plaintiff prior to submission of defendant's bid, defendant signed a subcontract in which defendant agreed: (1) to incorporate the conditions of the general contract between plaintiff and Durham County, including the provisions therein pertaining to the extension of time; (2) to commence work "when notified" by the plaintiff; and (3) to guarantee the quoted prices for the duration of the job "plus any

time extensions granted by the Owner." Plaintiff's request was made within the original time period plus the 334-day time extension granted by the Owner. Undoubtedly, plaintiff might have organized its activities so as to place a lesser burden on defendant, but it was not obligated under the subcontract to do so. Contracts are made for the benefit of all parties to the contract. Each party assumes certain risks. In this case defendant assumed both the risk that the cost of doing the work would go up before the job would be completed and the risk that the time for performing the work could be extended. Defendant cannot now deny these self-assumed obligations, even if the course of events prove them to be harsh. *Weyerhaeuser v. Carolina Power & Light Co.*, 257 N.C. 717, 722, 127 S.E. 2d 539 (1962).

We do not agree with defendant that the language "for the duration of the job" was so ambiguous as to make the subcontract unenforceable. The subcontract explicitly defines the duration of the project as "the original job time plus any time extensions granted by the Owner." Moreover, we think that the context of the quoted language indicates that "job" refers to the construction of the entire hospital complex and not just the curb and gutter work.

The trial court's rulings on plaintiff's motion for directed verdict on plaintiff's claim and defendant's counterclaim are

Affirmed.

Judges HEDRICK and MARTIN (Harry C.) concur.